IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| KIONDRA BROADWAY, )<br>)<br>*Plaintiff,* )<br>) **CIVIL ACTION NO.:** _____<br>v. )<br>) **JURY DEMANDED**<br>UNIVERSITY OF MARYLAND )<br>GLOBAL CAMPUS )<br>)<br>*Defendant.* )<br>) | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

NOW COMES Plaintiff Kiondra Broadway (hereinafter referred to as "Plaintiff") in the above-referenced matter, complaining of and about Defendant University of Maryland Global Campus (hereinafter referred to as "USMG" or "Defendant"), and for causes of action files this Plaintiff's Original Complaint, showing to the Court the following:

### I.    PARTIES

1. Plaintiff is an individual residing in 4154 Emerald North Drive, Dekalb County, Georgia. Plaintiff is a citizen of the United States and the State of Texas.

2. Defendant is a University of Maryland Global Campus Foundation, Inc., organized and existing under the laws of the State of Maryland and having offices and its principal place of business at 3300 Metzerott Road, Adelphi. Maryland, 20783.

### II.    JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's causes of

1

action arise under federal statutes: Title VII of the Civil Rights Act of 1964 (as amended) (which is codified in 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a)) (hereinafter referred to as "Title VII") and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

4. Venue properly lies within this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3). DEFENDANT's principal offices are located in 3300 Metzerott Road, Adelphi. Maryland, 20783, and a substantial part of the acts and omissions that give rise to this Complaint occurred within 3300 Metzerott Road, Adelphi. Maryland, 20783.

### III.  NATURE OF THE ACTION

5. This is an action brought pursuant to Title VII and the Texas Commission on Human Rights Act to correct and recover for Defendant's unlawful racial discrimination, disability discrimination, hostile work environment, retaliation, and to deter Defendant from continuing its unlawful and discriminatory employment practices.

### IV.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On September 22, 2020, Plaintiff filed a dual Charge of Discrimination (Charge No. 460-2016-00727) with the U.S. Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC") and the Texas Workforce Commission (hereinafter referred to as the "TWC") against Defendant for race discrimination, hostile work environment and retaliation.

7. Subsequently, the EEOC issued Plaintiff a Notice of Right to Sue, received on September 21, 2021. Plaintiff files this lawsuit within ninety (90) days of receiving the Right to Sue notice. Therefore, this lawsuit is timely filed.

### V.  FACTS

8. Plaintiff was hired by Defendant on May 2017 as an Overseas Director.

9. Ms. Broadway is an exemplary employee of USMG. After dedicating three (3)

years of service, she is being discharged because of her age, race, and in retaliation for filing grievances, and for her numerous complaints of discrimination made to management and to Human Resources—the last of which occurred shortly before her termination.

10. Plaintiff has endured workplace harassment, retaliation, and bullying based on disability, race, and marital status since September 2019.

11. Plaintiff has reached out on multiple occasions to her chain of command in upper management about her concerns after trying to resolve the concerns at the lowest level with her immediate supervisors, Ms. Patricia Jameson, and Ms. Amanda Maguire. These concerns continued to escalate and cause distress over the past year. Ms. Jameson went so far as to deny Plaintiff's request for mediation in October 2019.

12. In retaliation of reporting her concerns, Ms. Jameson and Ms. Maguire filed a false reprimand action against Plaintiff on April 21, 2020 to constructively discharge her from her employment. The reason for the claim is due to the annual renewal of the Department of Defensive ("DoD") contract for overseas employees as DoD contractors with the military.

13. UMGC normally issues the annual performance evaluations and employment notices between April and July as of the fiscal budget and the new academic year begins August 1st. If an overseas employee is released from UMGC, he or she has thirty (30) days to transition back to the United States, which is a taxing process. Most UMGC overseas employees, including Plaintiff, are sponsored by the university for housing and other support functions as expatriates.

14. To date, the reprimand is the first disciplinary action filed against Plaintiff without any prior progressive counseling plan or performance improvement plan. Ms. Jameson and Ms. Maguire used their working relationship with the HR Vice President, Julie Garcia, and other members involved in Plaintiff's grievance hearings to uphold the reprimand without any

substantial evidence and subjective testimonies by Ms. Jameson and Ms. Maguire.

15. After enduring five (5) months of UMGC internal grievance proceedings the Presidential office decided on August 20, 2020, to uphold the reprimand, stating that Plaintiff's claim had no evidence.

16. Plaintiff filed a 24-page grievance with 80 plus supporting documents. At each hearing, Plaintiff retained legal representation as did UMGC. UMGC violated its own internal policies and federal laws by upholding the reprimand and keeping Plaintiff working in a hostile work environment.

17. Two hearing officers from the internal hearings recommended to management to change the reporting line where Plaintiff no longer report to Ms. Jameson.

18. However, no action has been taken. The UMGC internal grievance process further escalated distress to Plaintiff's health as she has been subjected to ongoing harassment by Ms. Jameson and Ms. Maguire.

19. Plaintiff suffered an anxiety attack on April 13, 2020, due to the hostile working environment.

20. The following week after returning from emergency leave, Plaintiff was issued a reprimand by Ms. Jameson. The reprimand is another form of retaliation in which she has attested through her grievance with the employer.

21. Plaintiff filed a grievance on May 19, 2020. Her request for accommodations from her medical provider were filed on June 17, 2020 to accommodate her health while working under distress.

22. Following the submission of Plaintiff's accommodations, her employer attempted to circumvent her accommodations after disclosing her health concerns during a grievance

hearing on June 22, 2020.

23. On June 27, 2020, Plaintiff was informed by the Accessibility Services Director that her accommodations were discussed with HR and management and it was decided that her medical recommendations were either already supplied or were to be modified. Plaintiff was not a part of the interactive process with Accessibility Services, HR, and management during the interactive process.

24. After undergoing push back from HR and management Plaintiff's accommodations were approved by employer on July 9, 2020, then later finalized on July 21, 2020.

25. However, Plaintiff is still being subject to workplace harassment and bullying from her immediate supervisors, Ms. Patricia Jameson, and Ms. Amanda Maguire, with whom she filed a grievance prior to submitting her accommodations.

26. Repeatedly, the HR department tried to force Plaintiff to take intermittent leave under the Family Leave Medical Act (FMLA) throughout the grievance period. However, Plaintiff affirmed that her medical provider decided that accommodations should be the first remedy to pursue before intermittent FMLA leave. On July 31, 2020, Ms. Garcia scheduled an impromptu meeting with Plaintiff to discuss "alternative options."

27. Plaintiff agreed to the meeting if her attorney could join the call, but Ms. Garcia later denied meeting with Plaintiff.

28. On May 21, 2020, Plaintiff filed a new grievance. Defendant inquired if her claim of retaliation was based on the Equal Opportunity, and Plaintiff relayed that the stress she was enduring and exploitation from management. Plaintiff also relayed suffering retaliation based on

5

disability. Defendant failed to follow up regarding her concerns.

29. On June 27, 2020, Plaintiff was informed by the Accessibility Services Director that her accommodations were discussed with HR and management, and it was determined that her medical recommendations were either already provided or were to be modified. Intermittent FMLA leave was again suggested by the director. Plaintiff challenged the information provided by the director with supporting documents. Plaintiff expressed to the director that she was denied the opportunity to participate in the interactive process and requested to include an emergency contact for her accommodations.

30. Plaintiff was denied the medical recommendation to include an emergency contact as part of her accommodations in the event that she experienced an anxiety attack or was incapacitated and unable to communicate with her supervisor. As a single woman living abroad, this security of having an emergency contact was crucial for Plaintiff and its denial was another form of discrimination against her based on her marital status.

31. On July 13, 2020, Plaintiff received the determination of the Step Two hearing: HR supported Ms. Jameson and Ms. Maguire's action against Plaintiff. The recommendations of the Step Two hearing officer determination were implemented by Ms. Jameson on July 10, 2020, with the written feedback email prior to receiving the hearing officer determination on July 13, 2020. Plaintiff was not supplied the appeal form once again by HR upon receiving the Step Two Hearing determination, which Plaintiff had to request on July 23, 2020, to file her Step Three hearing.

32. The appeal document that HR representative Jayme Smith provided Plaintiff on July 23 was modified to omit the usual appeal options for a Step Three hearing.

33. On August 12, 2020, Plaintiff was denied her request to have the UMGC

President serve as the hearing officer in the Step Three hearing. In addition, HR changed the hearing format for the Step Three hearing to deny Plaintiff her due process rights.

34. On November 30, 2021, Plaintiff received a discharge letter from Defendant, ostensibly for professional and scholarly misconduct which resulted in a "disruption to business operations."

### VI.     CAUSES OF ACTION

### COUNT 1
### RACE DISCRIMINATION
### PURSUANT TO TITLE VII

35. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

36. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of her race.

37. Plaintiff can successfully establish her prima facie case of race discrimination under Title VII. As an African American woman, Plaintiff is a member of a protected class. Plaintiff can establish that her similarly situated co-workers were treated more favorably.

38. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect her status because of Plaintiff's race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

### COUNT 2
### RACE DISCRIMINATION
### PURSUANT TO TCHRA

39. Plaintiff incorporates by reference all of the foregoing allegations in each of the

paragraphs above as if fully set forth herein.

40. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of her race.

41. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely Plaintiff's Original Complaint affect Plaintiff's status because of Plaintiff's race, in violation of Texas Labor Code § 21.051 et seq.

## COUNT 3
## RACE DISCRIMINATION
## PURSUANT TO § 1981

42. Plaintiff hereby incorporates by reference all of the foregoing allegations in each of the paragraphs above as though fully set forth herein.

43. Defendant intentionally engaged in unlawful discriminatory practices against Plaintiff because of her race.

44. Pursuant to 42 U.S.C. § 1981, Plaintiff pleads a claim against Defendant for racial discrimination.

45. Plaintiff was subjected to racially derogatory treatment and treated differently than other non-African American employees in terms of her employment. Plaintiff has endured continuous workplace harassment on the basis of race. After making numerous complaints of such treatment, Defendant continued to harass Plaintiff and retaliate against her, resulting in Plaintiff's termination. Plaintiff was deprived of equal employment rights and her status as an employee was adversely affected. As a result of Defendant's discrimination, Plaintiff suffered

damages (in an amount that is within the jurisdictional limits of this Court).

46. Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment, or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect Plaintiff's employment status because of Plaintiff's race, in violation of 42 U.S.C. § 1981.

## COUNT 4
## NEGLIGENT SUPERVISION, TRAINING AND RETENTION

47. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

48. Defendant is liable to Plaintiff for negligent training, supervision, and retention because Plaintiff's injuries resulted from the failure of Defendant to take reasonable precautions to protect Plaintiff from the misconduct of its agents or other employees.

49. Defendant owed Plaintiff, as its employee, the legal duty to take reasonable precautions to protect her from injuries in the workplace, including mental/psychological injuries directly caused by Defendant's employees.

50. Defendant breached its duty by allowing management and HR to ignore the ongoing and building injuries sustained by Plaintiff, as there was no effort to rectify or correct the conduct of employees in supervisory authority over Plaintiff nor to fix the work environment.

51. Such ongoing conduct caused Plaintiff physical and mental injuries.

## COUNT 5
## DISABILITY DISCRIMINATION AND FAILURE TO ACCOMODATE PURSUANT TO THE ADA

52. Plaintiff incorporates by reference all of the foregoing allegations in each of the

paragraphs above as if fully set forth herein.

53. Plaintiff is a qualified individual within the meaning of the ADAAA (42 U.S.C. § 12111(8)).

54. Defendant is an employer and cover entity under the ADAAA (42 U.S.C. §§ 12111(2), (5)(A)).

55. Plaintiff was an employee of Defendant under the ADAAA (42 U.S.C. § 12111(4)).

56. Plaintiff suffered from emotional distress, phycological distress and respiratory distress. As such, Plaintiff suffers from a disability—a physical impairing condition that substantially limits a major life activity, including, sitting, walking, and working—within the meaning of the ADAAA (42 U.S.C. §§ 12102(1)(A), 2(A)&(B)).

57. Defendant regarded or perceived Plaintiff as having a disability within the meaning of the ADAAA (42 U.S.C. §§ 12102(1)(C), (3)(A)).

58. Defendant discriminated against Plaintiff on the basis of her disability in violation of the ADAAA (42 U.S.C. § 12112).

59. Defendant also discriminated against Plaintiff on the basis of "regarding her as" having a disability.

### COUNT 6
### HOSTILE WORK ENVIRONMENT AND HARRASSMENT

60. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

61. Through its unlawful and discriminatory employment practices including racial discrimination, disability discrimination, hostile work environment, retaliation, Defendant

subjected Plaintiff to a hostile work environment.

62. Defendant utilized Plaintiff's complaints of racial discrimination and disability discrimination as factors in these actions.

63. Therefore, Plaintiff was discriminated against by Defendant by being subjected to hostile work environment, contrary to the applicable law of the United States, as interpreted in the relevant precedent of the Supreme Court and the Fourth Circuit.

## COUNT 7
## RETALIATION PURSUANT TO TITLE VII

64. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

65. Defendant intentionally retaliated against Plaintiff because of the complaints of racial discrimination, disability discrimination, hostile work environment, retaliation, made to Defendant in violation of Title VII.

## COUNT 8
## RETALIATION PURSUANT TO TCHRA

66. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

67. Defendant intentionally retaliated against Plaintiff because of the complaints of racial discrimination, disability discrimination, hostile work environment, retaliation, made to Defendant in violation of the Texas Labor Code § 21.055.

## VII.   JURY DEMAND

68. Plaintiff demands a jury on all issues to be tried in this matter. Plaintiff submits the jury demand and herein submits the jury fee.

## VIII.   PRAYER

69. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be

cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

    a. All damages to which Plaintiff may be entitled pursuant to this Plaintiff's Original Complaint;

    b. Compensatory damages, including, but not limited to, emotional distress;

    c. Past, present, and future physical pain and mental suffering;

    d. Punitive damages;

    e. Reasonable attorneys' fees, as allowed by law;

    f. Pre-judgment interest at the highest rate permitted by law;

    g. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

    h. Costs of Court; and

    i. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any proper amendments thereto.

    Respectfully submitted,

    *A. Marques Pitre*_____

    A. Marques Pitre, Esq.
    PITRE & ASSOCIATES, LLC.
    Ronald Reagan Building &
    International Trade Center
    1300 Pennsylvania Avenue, NW, Suite 700
    Washington, DC 20004
    Main Tel. 202-204-3006
    Direct Tel. 309-287-1914
    Email: Ampitre@ampitreassociates.com
    *Counsel for Plaintiff*