IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| **KIONDRA BROADWAY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Case No.: GLS 21-3226 |
| | ) |
| **UNIVERSITY OF MARYLAND,** | ) |
| **GLOBAL CAMPUS,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**MEMORANDUM OPINION**

Plaintiff Kiondra Broadway ("Plaintiff") brings this action against Defendant University of Maryland, Global Campus ("Defendant" or "UMGC"). (ECF No. 34) ("Second Amended Complaint"). Plaintiff advances three claims: Count I: race discrimination (disparate treatment), in violation of 42 U.S.C. § 2000(e) *et seq.* ("Title VII"); Count II: retaliation for engaging in a protected activity, in violation of Title VII; and Count III: race discrimination (hostile work environment), in violation of Title VII. (*Id.*).

Pending before this Court[1] is "Defendant's Motion to Dismiss." (ECF No. 43) ("Motion"). The issues have been fully briefed, *see* ECF Nos. 44 and 47. Accordingly, this Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth more fully below, the Motion is **GRANTED**.

---

[1] This case is before the undersigned for all proceedings with the consent of the parties pursuant to 28 U.S.C. § 636(c). (ECF No. 17).

I.   **PROCEDURAL BACKGROUND**

On September 22, 2020, Plaintiff filed a Charge of Discrimination. (*See* Second Amended Complaint, ¶ 6). On September 21, 2021, the Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Notice of Right to Sue. (*See id.*, ¶ 7).

On December 20, 2021, Plaintiff filed her Complaint. (ECF No. 1). In Plaintiff's Complaint, she alleged the following: Count I: race discrimination (disparate treatment), in violation of Title VII; Count II: race discrimination, in violation of Texas Labor Code § 21.505 *et seq.* ("TCHRA"); Count III: race discrimination, in violation of 42 U.S.C. § 1981; Count IV: negligent supervision, training, and retention, in violation of Maryland law; Count V: disability discrimination and failure to accommodate, in violation of 42 U.S.C. § 12101 *et seq.* ("ADA"); Count VI: race discrimination (hostile work environment), in violation of Title VII; Count VII: retaliation, in violation of Title VII; and Count VIII, retaliation, in violation of TCHRA. (*Id.*).

On March 12, 2022, Plaintiff filed a First Amended Complaint. (ECF No. 12). In various paragraphs of the First Amended Complaint, she contends generally that UMGC discriminated against her based on her race, age, marital status, and disability. (*Id.*). However, while not entirely clear from her pleading, Plaintiff appeared to advance only the following claims: Count I: race discrimination, in violation of Title VII; Count II: disability discrimination, in violation of the ADA; Count III, retaliation for engaging in a protected activity, in violation of Title VII, and possibly the ADA; and Count IV, race discrimination (hostile work environment), in violation of Title VII. (*Id.*)

On March 30, 2022, Defendant filed a consent motion to extend the deadline to respond to the Amended Complaint, which the Court granted. (ECF Nos. 13, 18). On April 22, 2022, Defendant filed a letter request to file a motion to dismiss. (ECF No. 22). In that letter, the

2

Defendant advanced three arguments. First, that Plaintiff failed to set forth specific facts to support her claims of discrimination based on age or marital status. Second, to the extent that Plaintiff advances ADA claims, they are barred by the Eleventh Amendment immunity doctrine. Third, Plaintiff's Title VII race discrimination and retaliation claims should be dismissed as they amount to no more than conclusory and boilerplate allegations devoid of the specificity required by the Federal Rules of Civil Procedure. (*Id*.). Plaintiff filed an opposition, asserting that she "is not required to plead specific facts establishing a prima facie case" at this juncture. Rather, she is only required to "provide a short and plain statement of the claim showing that [she] is entitled to relief." According to the Plaintiff, her First Amended Complaint "must simply give the defendant fair notice of what [her] claim is and the grounds upon which it rests." Plaintiff's letter did not specifically address any of the Eleventh Amendment claims. (ECF No. 24).

On June 21, 2022, the Court held a telephonic hearing related to the Defendant's letter request to file a motion to dismiss. (ECF No. 30). After entertaining argument from the parties, the Court made an oral ruling granting in part, denying in part the dismissal request. (ECF No. 32). By written order, the Court issued an order dismissing Count II in its entirety and dismissing Count III to the extent that it related to the ADA. The Court also denied the Defendant's request to dismiss Counts I, III and IV. Finally, the Court granted Plaintiff's request to file a Second Amended Complaint, admonishing the Plaintiff to plead her allegations with specificity as required by law. (ECF Nos. 31, 32).

On July 22, 2022, Plaintiff filed her Second Amended Complaint[2], which for the remaining three counts, largely mirrors the allegations contained in the First Amended Complaint, both in

---

[2] Plaintiff's Second Amended Complaint was untimely filed, so the Defendant sought to strike the pleading. (ECF Nos. 34, 35). After entertaining briefing from Plaintiff, the Court found good cause to permit the late filing. (ECF Nos. 36-38).

3

terms of factual content and pleading style. In the Second Amended Complaint, Plaintiff seemingly alleges the following: Count I: race discrimination (disparate treatment), in violation of Title VII; Count II: retaliation for engaging in a protected activity, in violation of Title VII; and Count III: race discrimination (hostile work environment), in violation of Title VII. (ECF No. 34).

On August 26, 2022, the Defendant filed a letter request to file a motion to dismiss the Second Amended Complaint, which Plaintiff opposed. (ECF Nos. 39, 41). In its second letter request, the Defendant asserted that Plaintiff's Second Amended Complaint failed to cure the pleading deficiencies that existed in the First Amended Complaint, namely that the operative document is still devoid of specific factual allegations to support her claims. (ECF No. 39). In her response, Plaintiff filed a letter containing virtually identical verbiage as the letter response that she had filed after the Defendant made its first request to dismiss the action. (*Compare* ECF No. 24 *with* ECF No. 41).

On October 26, 2022, the Court granted the Defendant's request to file a motion to dismiss and set forth the briefing schedule. (ECF No. 42). On November 28, 2022, Defendant filed the Motion. On December 27, 2022, Plaintiff filed her opposition to the Motion. (ECF No. 44, "Opposition"). On January 11, 2023, Defendant filed a reply brief in support of the Motion. (ECF No. 47, "Reply").

II.    FACTUAL BACKGROUND[3]

In 2017, Defendant hired Plaintiff as a program coordinator. (Second Amended Complaint, ¶ 8). Plaintiff, an exemplary employee, began enduring workplace "harassment and bullying" in or about September 2019 from her immediate supervisors, Patricia Jameson and Amanda Maguire,

---

[3] Unless otherwise noted, the facts are taken from the Second Amended Complaint, ECF No. 34, and are construed in the light most favorable to the non-moving party, Plaintiff. This Court assumes the facts to be true. *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

who are both white females. (*Id.*, ¶¶ 9-11). On September 1, 2019, Plaintiff reached out to "upper management" about the "harassment and bullying" from her immediate supervisors. (*Id.*, ¶ 11). Ms. Maguire and Ms. Jameson's mistreatment of Plaintiff continued to escalate throughout 2019. (*Id.*). In October 2019, Plaintiff attempted to resolve the situation by requesting a mediation session with her immediate supervisors, but Ms. Jameson denied the mediation request. (*Id.*). On April 13, 2020, due to the treatment by her supervisors, Plaintiff suffered an anxiety attack. (*Id.*, ¶ 19). A week later, on April 21, 2020, Ms. Jameson and Ms. Maguire filed a "false reprimand" against Plaintiff, but Plaintiff does not specify what the "false reprimand" included. (*Id.*, ¶¶ 12, 20). The "false reprimand" was the first disciplinary action that Plaintiff had received during her employment by UMGC. (*Id.*, ¶ 14). In addition, the "false reprimand" was filed prior to any alternative administrative actions being taken, such as the issuance of a "performance improvement plan" or "progressive counseling plan." (*Id.*).

Plaintiff challenged the reprimand. (*Id.* ¶¶ 14-16). After multiple internal hearings, Defendant's Human Resources ("HR") Vice President, Julie Garcia, upheld UMGC's decision despite the fact that the only evidence that supported the reprimand was the subjective testimony of Ms. Jameson and Ms. Maguire. (*Id.*). Plaintiff, on the other hand, submitted a 24-page grievance with over 80 supporting documents in opposition to the "false reprimand." (*Id.*, ¶ 16). Thereafter, two internal hearing officers recommended to management that Plaintiff no longer report to Ms. Jameson, but management did not make any changes. (*Id.*, ¶¶ 17-18). On May 19, 2020, Plaintiff filed a grievance, although Plaintiff does not describe with particularity why she filed the grievance or to whom the grievance was filed. (*Id.*, ¶ 21).

On or about May 21, 2020, Plaintiff filed a new grievance, however, here, too, Plaintiff does not provide any detail related to why she filed the grievance or to whom the grievance was

filed. (*Id.*, ¶ 28). After filing the grievance, the Defendant asked Plaintiff if her grievance was based on "Equal Opportunity," and Plaintiff informed Defendant that her grievance was due to the "stress and exploitation" she was enduring from "management." (*Id.*). Defendant did not follow up with Plaintiff regarding her complaints of "stress and exploitation." (*Id.*).

On June 17, 2020, Plaintiff sought medical accommodations, such as including an emergency contact in her emergency accommodation plan, in the event that she was to experience another anxiety attack. (*Id.* ¶¶ 21, 29). On June 22, 2020, the Defendant disclosed Plaintiff's health concerns during an internal grievance hearing. (*Id.*, ¶ 22). The sequencing of events is not entirely clear in the Second Amended Complaint; however, the Court believes that the disclosure of Plaintiff's health concerns took place during a grievance hearing related to her May 21, 2020, grievance. On June 27, 2020, Defendant's Accessibility Services Director, after discussions with Defendant's Human Resources and management personnel, initially declined to provide Plaintiff with her requested medical accommodations, instead seeking to have Plaintiff take intermittent leave pursuant to the Family Leave Medical Act ("FMLA"). (*Id.* ¶¶ 23, 29). On July 9, 2020, only after Plaintiff challenged the decision to not provide Plaintiff with the requested medical accommodations, the Defendant approved Plaintiff's request. (*Id.*, ¶¶ 24-27).

On July 13, 2020, after multiple internal grievance hearings, Defendant decided to deny Plaintiff's grievance and HR informed Plaintiff that it "decided to support Ms. Jameson and Ms. Maguire's action against Plaintiff." (*Id.*, ¶¶ 31-32). Plaintiff was denied the opportunity to appeal the decision. (*Id.*, ¶¶ 32-33). Although unclear from the Second Amended Complaint, the Court believes that Plaintiff is attempting to allege that the above referenced internal hearings related to her May 21, 2020, grievance and took place sometime between May 21, 2020, and July 13, 2020.

On July 31, 2020, Ms. Garcia scheduled a meeting with Plaintiff to discuss intermittent leave under the FMLA and "alternative options" to medical accommodations. (*Id.*, ¶ 26). Plaintiff agreed to the meeting if her attorney could be present, but Ms. Garcia denied to meet with Plaintiff if her attorney was going to be present. (*Id.*, ¶ 27).

On November 30, 2021, Plaintiff received a discharge letter from Defendant, for professional and scholarly misconduct which resulted in a "disruption to business operations." (*Id.*, ¶ 34).

### III. STANDARD OF REVIEW

#### A. Motion to Dismiss for Failure to State a Claim

A defendant who files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the facts set forth in a complaint. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016); *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

When resolving a 12(b)(6) motion, a court accepts as true the **well-pleaded** allegations in a complaint. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (emphasis supplied). When ruling on such a motion, then, a court "does not resolve the contests surrounding the facts [or] the merits of a claim." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (citing *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). Rather, at this stage, a court considers the complaint as a whole and construes the facts advanced as true, viewing them in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, a complaint must allege sufficient facts to establish each element of a claim asserted. *Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 449 (D. Md. 2013), *aff'd sub nom.*, *Goss v. Bank of Am., N.A.*, 546 F. App'x 165 (4th Cir. 2013). In addition, a complaint must satisfy the pleading standard set forth in Fed. R. Civ. P. 8(a) and contain facts

7

"showing" entitlement to relief. *Twombly*, 550 U.S. at 555-56 (complaint must set forth enough facts as to suggest a "cognizable cause of action"). In other words, a complaint must do more than formulaically recite "the elements of a cause of action," or must do more than make "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alternation in original) (internal quotation marks omitted) (quoting *Twombly*, *supra* at 555, 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 258 (4th Cir. 2009). A court "must be able to draw the reasonable inference [from the well-pleaded facts] that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

Defendant advances three arguments in support of its Motion: (1) Plaintiff's disparate treatment claim must be dismissed because Plaintiff's "factual allegations are insufficient to raise her right to relief above the speculative level;" (2) Plaintiff's retaliation claims must be dismissed because Plaintiff offers no more than "threadbare recitals of the elements of a cause of action;" and (3) Plaintiff's hostile work environment claim arises from mere "dissatisfaction with internal processes at the university," and Plaintiff fails to allege the facts necessary to satisfy the "high bar" set for hostile work environment claims. (Motion, pp. 7, 9, 12-13).

Plaintiff counters that the Court should deny the Motion for the following reasons: (1) Plaintiff's disparate treatment claim is adequately pleaded and Defendant failed to cite to any instances where Plaintiff was disciplined similarly to a white coworker; (2) Plaintiff adequately pleaded a retaliation claim when she asserted that she filed several complaints against the Defendant and the Defendant both failed to investigate those complaints and issued a "false

8

reprimand" against Plaintiff; and (3) Plaintiff adequately pleaded her hostile work environment claim because "the instances of conduct alleged by Plaintiff are of the severity and pervasiveness necessary" to establish her claim. (Opposition, pp. 4-5, 7, 9-10). The Court will address each of these arguments seriatim.

### A. Disparate Treatment

Defendant asserts that Plaintiff failed to establish a prima facie claim of disparate treatment. Primarily, Defendant argues that Plaintiff does not specify how she was treated differently than her coworkers or, more generally, identify any similarly situated employees from which she was treated differently. (Motion, p. 8; Reply, pp. 1-2). Plaintiff contends that the facts alleged in the Second Amended Complaint sufficiently support an inference that Plaintiff was discriminated against due to her race. Plaintiff also appears to argue that the Defendant bears the burden of establishing that Plaintiff was treated similarly to white coworkers, and because Defendant failed to cite to any instances where Plaintiff was disciplined similarly to white coworkers, Defendant's Motion should fail with respect to Plaintiff's disparate treatment claim. (Opposition, pp. 4-6).

Title VII prohibits employers from "discharg[ing] any individual, or otherwise … discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). This section of Title VII has "often been referred to as the 'disparate treatment' (or 'intentional discrimination') provision. . . ." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). Plaintiff bears the burden of proving this claim *at trial* by a preponderance of evidence. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (emphasis supplied).

Typically, a plaintiff may prove intentional discrimination or disparate treatment at trial in one of two ways. First, by offering "'direct or indirect' evidence of discrimination under ordinary principles of proof." *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (internal citation omitted), *cert. denied*, 520 U.S. 1116 (1997). "Direct evidence" of discrimination must be "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc). If a plaintiff does not establish direct or circumstantial evidence of discrimination, a plaintiff can show a Title VII violation by utilizing the burden-shifting framework first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The elements for a prima facie case of disparate treatment in violation of Title VII are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Goode v. Cent. Va. Legal Aid Soc., Inc.*, 807 F.3d 619, 626 (4th Cir. 2015) (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)); *McDonnell Douglas*, 411 U.S. at 801.

At the motion to dismiss stage, a plaintiff does not need to establish a prima facie case of discrimination. *Prosa v. Austin*, Civ. No. ELH 20-3015, 2022 WL 394465, at *24 (D. Md. Feb 8, 2022). However, "reference to the elements of a prima facie claim helps [a court] to gauge the adequacy of the factual allegations" in a complaint to ensure that a plaintiff has stated a claim to relief that is plausible on its face. *Id.* at *24; *see also Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (so long as a complaint satisfies the pleading standard set forth in *Iqbal* and *Twombly*, plaintiff need not plead facts sufficient to establish a prima facie case of race discrimination to survive a motion to dismiss); *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747-48 (4th Cir. 2017) ("While a plaintiff need not plead a prima facie case to survive a

motion to dismiss, a Title VII complaint is still subject to dismissal if it does not meet the ordinary pleading standard under *Twombly* and *Iqbal*) (internal citations omitted); *Coleman, supra*, 626 F.3d 187 at 190.

In sum, at this procedural juncture, a plaintiff must allege facts "that plausibly state a violation of Title VII 'above a speculative level.'" *Prosa*, 2022 WL 394465, at *24 (quoting *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (further citation omitted)).

Plaintiff asserts that she is a member of a protected class and that she was an exemplary employee during her nearly five years working for the Defendant. (Second Amended Complaint, ¶¶ 8, 9). Defendant does not appear to contest either of these claims in the Motion. (*See* Motion, pp. 7-9). Next, Plaintiff claims that she was terminated, which is clearly an adverse employment action. *See Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) (categorizing adverse employment actions as things like hiring, firing, failing to promote, or reassigning to a different position with significantly different responsibilities); *Yampierre v. Balt. Police Dep't*, Civ. No. ELH-21-1209, 2022 WL 3577268, at *26 (D. Md. Aug. 18, 2022) (same).

Therefore, the Court must next determine whether, when construing the facts in the light most favorable to Plaintiff, Plaintiff plausibly alleged that the adverse employment action, her termination, was related to her membership in a protected class. The Defendant argues that Plaintiff failed to establish a connection between the adverse employment action and her membership in a protected class because she did not allege facts showing that she was treated differently than similarly situated comparators. (Motion, p. 8; Reply, pp. 2-3). On the other side of the ledger, Plaintiff argues that the facts lead to the "clear and reasonable inference" that Plaintiff was discriminated against due to her race. Plaintiff also avers that Defendant failed to present any

evidence that Plaintiff was treated the same as coworkers outside of the protected class. (Opposition, p. 6).

As a preliminary matter, the Court finds that a plaintiff is not always required to rely on comparator information to show that an adverse employment action is related to her membership in a protected class. *Ensor v. Jenkins*, Civ. No. ELH-20-1266, 2021 WL 1139760, at *28 (D. Md. Mar. 25, 2021) ("A plaintiff is 'not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim'" (citing *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010), cert. denied, 562 U.S. 1219 (2011))). However, when a plaintiff's claim relies on comparator information, the similarity to comparators must be clearly identified. *Swaso, supra.*, 698 F. App'x at 748.

In this case, Plaintiff's disparate treatment claim is based on her assertion that she was treated differently than her coworkers. In the Second Amended Complaint, Plaintiff generally alleges that "Plaintiff was treated differently and subjected to different terms and conditions of employment in comparison to non-African American employees." (Second Amended Complaint, ¶ 38). However, Plaintiff fails to identify **even one** comparator in her Second Amended Complaint to support this contention. Nowhere in Plaintiff's Second Amended Complaint does she specify which coworkers Defendant allegedly treated differently, nor does she articulate how such employees were treated differently. Furthermore, the Court finds that the law is clear that the Plaintiff bears the burden of adequately pleading that Plaintiff was treated differently than coworkers outside of the protected class. It is the Plaintiff, not Defendant, who bears the burden of persuasion. *Swierkiewicz*, 534 U.S. at 510-11.

In sum, the Court finds that even when construing the facts in Plaintiff's favor, Plaintiff fails to plausibly plead a claim of disparate treatment as the Second Amended Complaint contains

no more than "threadbare recitals of the elements of a cause of action," which precludes the Court from drawing a reasonable inference that the Defendant is liable for disparate treatment on the basis of Plaintiff's race. *Iqbal*, 556 U.S. at 678.

Accordingly, the Motion is granted with respect to Plaintiff's disparate treatment claim.

**B. Retaliation**

Title VII prohibits an employer from retaliating against an employee because the employee opposed "any practice made an unlawful employment practice by [Title VII]," including complaining about discrimination to supervisors. *See* 42 U.S.C. § 2000e-3(a); *see also Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d. 577, 588 (D. Md. 2012) (internal citation omitted). An employee may establish that her employer took action against her "with discriminatory or retaliatory intent through direct evidence or through the [*McDonnell Douglas* framework]." *Strothers v. City of Laurel Md.*, 895 F.3d 317, 327 (4th Cir. 2018) (citing *Foster v. Univ. of Md. Eastern Shore*, 787 F.3d 243, 249 (4th Cir. 2015). Again, at this motion to dismiss phase, the Court is concerned with whether the Second Amended Complaint alleges sufficient facts to establish each element of a claim asserted. *See Goss*, 917 F. Supp. 2d at 449. In addition, the Court is focused on whether the Second Amended Complaint satisfies the pleading standard set forth in Fed. R. Civ. P. 8(a) and *Twombly*.

The elements of a retaliation claim under Title VII are: (1) engagement by a plaintiff in a protected activity; (2) adverse action by an employer against a plaintiff; and (3) a causal link between the protected activity and the adverse action taken by the employer. *Sempowich v. Tactile Systems Technology, Inc.*, 19 F.4th 643, 653 (4th Cir. 2021).

"Protected activity" falls into one of two categories: (1) opposition; or (2) participation. Protected activity under the "opposition" category includes informal protests related to an employment practice, such as voicing complaints or filing formal grievances. *Prosa*, 2022 WL

13

394465, at *31. For an employee's conduct in the "opposition" category to be protected, the employee must show that: (1) she reasonably believes that the action she opposed constituted a Title VII violation; and (2) her conduct in opposition was reasonable. *Id.* Protected activity in the "participation" category includes an employee participating in an ongoing investigation or proceeding under Title VII. *Netter v. Barnes*, 908 F.3d 932, 938-39 (4th Cir. 2018).

An adverse employment action, in the context of a retaliation claim, extends beyond actions that have a tangible effect on the terms and conditions of employment. *Rodgers*, 586 F. Supp. 3d at 446. Instead, the "adverse action" need only have some "direct or indirect impact on an individual's employment" such that a reasonable worker would be dissuaded from engaging in a protected activity. *Id.*

A plaintiff can establish a causal link between the protected activity and the adverse action at the pleading stage through two routes. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (internal citations omitted). First, a plaintiff may establish the existence of facts that show that the protected activity caused the adverse action. *Johnson v. UPS, Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021). Second, a plaintiff can establish that the "adverse act bears sufficient temporal proximity to the protected activity." *Id.* Generally, a period of longer than two months between the protected activity and the adverse action "significantly weakens the inference of causation." *Roberts*, 998 F.3d at 123, 127 (internal citation omitted).

In the instant action, the Defendant argues that Plaintiff's retaliation claim should be dismissed for the following reasons: (1) Plaintiff alleges instances of retaliation that are not covered by Title VII; (2) Plaintiff fails to establish that she engaged in protected activity; (3) Plaintiff fails to identify an adverse employment action; and (4) assuming that Plaintiff does adequately plead that she engaged in a protected activity and faced an adverse employment action,

she fails to plausibly assert a causal link between the two. (Motion, pp. 10-11). Plaintiff counters that two facts support her retaliation claim: (1) on April 21, 2020, Ms. Jameson and Ms. Maguire issued a baseless reprimand against Plaintiff; and (2) the Defendant failed to investigate her race discrimination claim against Ms. Jameson and Ms. Maguire. (Opposition, p. 10).

First, the Court finds that Plaintiff engaged in a "protected activity" on September 1, 2019, when she reported racial discrimination to upper management. *See Rodgers*, 586 F. Supp. 3d at 446. Furthermore, the Court finds that the April 21, 2020, false reprimand that Ms. Jameson and Ms. Maguire filed against Plaintiff qualifies as "adverse action." *See Smith v. Bd. of Ed. of Prince George's Cnty.*, Civ. No. GJH 16-206, 2016 WL 4014563, at *5 (D. Md. July 26, 2016) (finding that reprimands are adverse actions and that many courts have mistakenly applied the restrictive definition of "adverse employment actions" related to disparate treatment in the context of retaliation claims); *Howerton v. Bd. of Ed. of Prince George's Cnty.*, Civ. No. TDC 14-242, 2015 WL 4994536, at *17 (D. Md. Aug. 19, 2015) (reprimands may dissuade a reasonable employee from engaging in protected activity and can constitute an adverse action).

However, the Court finds that the Plaintiff fails to plausibly allege a "causal link" between the protected activity and the adverse employment action. The Plaintiff does not allege any specific facts that show that there is a causal connection between her report of racial discrimination and the false reprimand. Instead, Plaintiff provides no more than conclusory allegations devoid of sufficient detail from which the Court could reasonably infer that there is a causal connection between the protected activity and the alleged retaliatory conduct. *See Iqbal*, 556 U.S. at 678.

In addition, temporal proximity does not support the existence of a causal link in this case. Plaintiff asserts that she "reached out on September 1, 2019, to her chain of command in upper management" and the false reprimand was filed on April 21, 2020—nearly eight months later. An

eight-month period is well-outside the two-month window in which courts will normally find a causal link between an individual engaging in a protected activity and an adverse employment action. *See Roberts*, 998 F.3d at 123, 127. As such, Plaintiff fails to plausibly assert a prima facie case of retaliation with respect to the false reprimand.

Second, with respect to the Defendant's alleged failure to investigate Plaintiff's race discrimination claim against Ms. Jameson and Ms. Maguire, various courts have found that an employer's failure to investigate an internal complaint is not an adverse employment action. *See Yampierre v. Balt. Police Dep't*, Civ. No. ELH 21-1209, 2022 WL 3577268, at *37 (D. Md. Aug. 18, 2022) ("Broadly speaking, the 'failure to investigate an internal complaint cannot be considered retaliatory' because it 'leaves an employee no worse off than before the complaint was filed'") (citing *Daniels v. UPS, Inc.*, 701 F.3d 620, 640 (10th Cir. 2012)); *see also Danial v. Morgan State Univ.*, Civ. No. CCB 17-959, 2018 WL 3625767, (D. Md. July 27, 2018) (same) (citing *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 722 (2d Cir. 2010)); *Coon v. Rex Hosp., Inc.*, Civ. No. 20-652, 2021 WL 3620282, at *6 (W.D.N.C. Aug. 16, 2021) (same). Thus, the Defendant's alleged failure to investigate does not qualify as an adverse action and Plaintiff, even when the Court views all facts in the light most favorable to Plaintiff, does not plausibly assert a prima facie claim of retaliation with respect to the Defendant's failure to investigate.

In sum, the Defendant's Motion is granted with respect to the issue of retaliation.

**C. Hostile Work Environment**

A "hostile work environment" is one that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [employment] and create an abusive work environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264,

277 (4th Cir. 2015). A plaintiff advancing a "hostile work environment" claim based on race must allege that: (1) she was subjected to unwelcome conduct by her employer; (2) which resulted because of on her race; (3) the conduct was sufficiently pervasive or severe to alter the conditions of her employment and to create an abusive atmosphere; and (4) is imputable to the employer. *Strothers, supra,* 895 F.3d at 328 (internal citation omitted).

To determine whether conduct is "severe" or "pervasive," courts analyze factors such as: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with the employee's work performance." *Eckert v. Quality Assocs.*, Civ. No. WDQ 14–1815, 2015 WL 5083329, at *4 (D. Md. Aug. 26, 2015) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)); *see also Von Gunten v. Maryland*, 243 F.3d 858, 869-70 (4th Cir. 2001).

Here, the Defendants argue that the incidents alleged by the Plaintiff are insufficient to state a claim for hostile work environment because Plaintiff's allegations amount to no more than "dissatisfaction with the internal processes with the university" and Plaintiff's Second Amended Complaint lacks any detail explaining how Plaintiff's work environment was hostile. (Motion, p. 13). Plaintiff avers that the instances of conduct alleged in the Second Amended Complaint, when taken as a whole, are enough to demonstrate a hostile work environment. (Opposition, p. 7). However, as Defendant correctly argues in its Reply, Plaintiff does not specifically identify the instances of conduct in her Opposition. (Reply, p. 5).

Plaintiff generally asserts that her immediate supervisors subjected her to "workplace harassment, retaliation, and bullying," and makes the following specific factual assertions: (1) in October 2019, Ms. Jameson denied Plaintiff's request to hold a mediation session with Plaintiff regarding the alleged racial discrimination; (2) on April 21, 2020, Ms. Jameson and Ms. Maguire

filed a false reprimand against Plaintiff; (3) the Defendant upheld the false reprimand solely on the basis of Ms. Jameson and Ms. Maguire's subjective testimony; (4) Defendant's Accessibility Services Director initially denied Plaintiff's workplace accommodation request, seeking instead to have Plaintiff take intermittent leave under the FMLA; and (5) during a June 22, 2020, internal grievance hearing, the Defendant disclosed Plaintiff's health concerns.

As a preliminary matter, Plaintiff's generalized assertions that she endured workplace harassment and bullying do not support her hostile work environment claim. *See Miller v. Raimondo*, Civ. No. PX 22-331, 2022 WL 14848685, at *3 (D. Md. Oct. 26, 2022) (conclusory allegations do not rise "above the speculative level") (citing *Coleman*, *supra,* 626 F.3d at 190); *Jones v. Eli Lilly & Co.*, Civ. No. GJH 20-3564, 2021 WL 4502810, at *4 (D. Md. Sept. 30, 2021) (assertions of discrimination need to refer to particular facts and instances) (citing *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979)); *Hart v. Broadway Servs., Inc.*, 899 F. Supp. 2d 433, 444 (D. Md. 2012) ("Bare-bones, conclusory accusations cannot support a claim of hostile work environment").

The specific factual allegations that Plaintiff does provide fail to meet the "severe" or "pervasive" standard. Not only does Plaintiff make relatively few factual assertions, mostly relying on "conclusory allegations," but the few specific instances of conduct are often separated by months at a time, e.g., Ms. Jameson denied Plaintiff's mediation request in October 2019 then Ms. Jameson and Ms. Maguire filed the false reprimand in April 2020. These few, infrequent instances of conduct, without more, precludes the Court from drawing a reasonable inference that Defendant is liable under a hostile work environment claim. *See Wiley v. Austin*, Civ. No. GJH 21-2767, 2023 WL 348966, at *3 (D Md. Jan. 20, 2023) (holding that viable hostile work environment claims involve repeated instances of conduct unless an individual incident is so serious as to create a

hostile work environment on its own); *see also id.* (dismissing hostile work environment claim where allegations of conduct were not serious or frequent enough to plausibly meet the severe or pervasive standard); *see also Iqbal*, 556 U.S. at 678.

Simply put, even when construing the facts in the light most favorable to Plaintiff, Plaintiff's allegations fall short of the "severe" and "pervasive" standard. *Taylor v. Go-Getters, Inc.*, Civ. No. ELH-20-3624, 2021 WL 5840956, at *12 (D. Md. Dec. 9, 2021) (finding that "[c]ourts in this [c]ircuit have consistently declined to find a hostile work environment based on facts far worse" when ruling on a case in which the defendant "constantly" called plaintiff outside work hours, *reprimanded plaintiff*, warned plaintiff that '[b]lack [m]ale[s] historically do not do well and failed to provide him with effective assistance') (emphasis added); *See also Buchhagen v. ICF Int'l, Inc.,* 545 F. App'x 217, 219 (4th Cir. 2013) (per curiam) (stating that allegations of yelling at the plaintiff in a meeting, consistently criticizing the plaintiff for mistakes, and "unfairly scrutinizing and criticizing" plaintiff's failure to follow instructions, fall "*far short* of being severe or pervasive enough to establish an abusive environment") (emphasis added); *Booth v. Cnty Exec.*, 186 F. Supp. 3d 479, 487 (D. Md. 2016) (dismissing hostile work environment claim where instances of conduct were infrequent and none of the instances of conduct involved "intimidation or threats … racial epithets or racially derogatory language"); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (stating that "offhand comments and isolated incidents (*unless extremely serious*)" are insufficient to establish a hostile work environment) (emphasis added); *see also Iqbal*, 556 U.S. at 678 (threadbare, conclusory allegations insufficient to support a claim).

Accordingly, the Defendant's Motion is granted with respect to Plaintiff's hostile work environment claim.

V.  **Conclusion**

For the foregoing reasons, the Motion is **GRANTED**. The Clerk of the Court shall enter judgment in favor of the Defendant as to Counts I, II, and III. The Clerk of the Court is further directed to **CLOSE** this case.

A separate Order follows.

Dated:  July 7, 2023

                                                     /s/
The Honorable Gina L. Simms
United States Magistrate Judge